UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

JERMAINE HUNTER,

               Plaintiff,              Case No. 1:17-cv-109

v.                                    Honorable Paul L. Maloney

CARMEN PALMER et al.,

               Defendants.

_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's federal claims against Defendants Klien, DeMaeyer, Chaney and Miller for failure to state a claim. The Court also will dismiss without prejudice Plaintiff's state-law claims against Defendants Klien, DeMaeyer, Chane and Miller. In addition, the Court will dismiss with prejudice all of

Plaintiff's claims, except his retaliation claims, against Defendants Palmer, Bevington and Jackson.  The Court will serve Plaintiff's retaliation claim against Defendants Palmer, Bevington and Jackson.

## Discussion

### I.    Factual allegations

Plaintiff Jermaine Hunter presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Thumb Correctional Facility, though the actions about which he complains occurred while he was housed at the Michigan Reformatory (RMI).  He sues the following RMI officials: Warden Carmen Palmer; Lieutenant (unknown) Bevington; Sergeants J. Jackson and D. Klien; and Corrections Officers Zebediah DeMaeyer, (unknown) Chaney, and K. Miller.

Plaintiff complains that, on June 3, 2015, as we was exiting the food service building at 6:58 a.m., Defendant Bevington stopped Plaintiff for a routine pat-down search, to be conducted by Defendant trainee DeMaeyer.  During the search, Defendant DeMaeyer ran his hands up one of Plaintiff's legs and then allegedly deliberately and intentionally lingered over Plaintiff's testicles and buttocks.  Plaintiff contends that DeMaeyer "cuff[ed] and caress[ed]" those places in a sexual manner.  (Compl., ECF No. 1, PageID.7)  Plaintiff jumped away, angrily saying, "He [DeMaeyer] is not supposed to be cuffing and caressing my testicles and buttocks in a sexual manner like that[."] (*Id.*)  Defendant DeMaeyer laughed and stated, "He's [Plaintiff is] the only one complaining[."] (*Id.*)  Plaintiff contends that the Prison Rape Elimination Act (PREA), 42 U.S.C. § 15601 et seq., and MDOC Policy Directive 03.03.130 required that Bevington immediately intervene and protect Plaintiff and then document Plaintiff's complaint.  Instead, Defendant Bevington advised Plaintiff that DeMaeyer could do what he had done, and Bevington gave Plaintiff a direct order to allow DeMaeyer to complete his search.  Plaintiff contends that Defendant

DeMaeyer ran his hands up Plaintiff's other leg and again "cuffed and caressed" Plaintiff's testicles and

buttocks.  Plaintiff claims that he was traumatized by the search, as it made him re-experience the sexual

assaults to which he had been subjected three-and-one-half years earlier at another prison.

After the search, Plaintiff informed Defendants Bevington and DeMaeyer of his intent to

file a grievance.  Bevington told Plaintiff "aggressively" insisted that DeMaeyer "could do that." (*Id.*,

PageID.9.)  Plaintiff argues that, by encouraging DeMaeyer's conduct, Defendant Bevington exacerbated

Plaintiff's trauma and caused a heated argument to erupt between Bevington and Plaintiff.  Plaintiff

contends that the incident occurred in front of other prisoners and staff members and was recorded by

prison cameras.

Plaintiff filed a grievance against Defendants Bevington and DeMaeyer on June 3, 2015,

in which he alleged staff sexual misconduct and requested the video footage.  On June 9, Defendant Miller

allegedly circumvented the PREA process by classifying the grievance as a claim of sexual harassment

rather than as staff sexual misconduct.  Defendant Miller then documented the grievance as "Unfounded,"

before forwarding it to Defendant Jackson for investigation.  Plaintiff claims that the PREA investigation

standards required Defendants Bevington and DeMaeyer to be removed from their posts during

investigation, which did not happen.  Plaintiff alleges that Defendant Miller, as grievance coordinator, and

Defendant Palmer, as the designated PREA administrator, did not take his claim seriously.

On June 11, 2015, at 10:30 a.m., Defendant Jackson attempted to interview Plaintiff on

his grievance.  Plaintiff refused to come into the office, as Defendant DeMaeyer was also present, causing

Plaintiff to feel intimidated and harassed.  Jackson agreed to have DeMaeyer leave the office, and he then

interviewed Plaintiff for 22 minutes on his grievance.  Defendant Jackson attempted to get Plaintiff to sign

off on his grievance, as DeMaeyer was a trainee. Plaintiff alleges that, when he rejected Jackson's "demands," Jackson threatened to file a disciplinary charge for filing a false grievance. Plaintiff complains that Defendant Jackson violated the PREA and MDOC policy by not "thoroughly" and "objectively" investigating the grievance and by not viewing the video footage. (*Id.*, PageID.11.) In what Plaintiff describes as a "fabricated" investigative report, Defendant found the grievance unsupported. (*Id.*)

About an hour later, Defendant DeMaeyer confronted Plaintiff about the grievance and told Plaintiff that "prisoners don't have any rights." (*Id.*, PageID.12.) He continued, saying, "[C]omplaining is gonna get you in a lot of trouble[."] (*Id.*) Plaintiff claims that the "threats" caused him extreme paranoia and emotional distress.

Six days later, on June 22, Plaintiff filed a grievance on Defendants Jackson and DeMaeyer, which Defendant Grievance Coordinator Miller classified as a claim of "Other Staff Corruption." (*Id.*, PageID.13.) Defendant Miller assigned Defendant Jackson to investigate, contrary to policy. Miller also sent a memo to Plaintiff on July 1, 2015, indicating that the investigation of the first grievance had been suspended, "pending referral and possible investigation under PREA guidelines[."] (*Id.*)

On July 2, 2015, Defendant Jackson filed a misconduct report charging Plaintiff with interference with the administration of the rules, a Class II misconduct. The charge alleged that Defendant Jackson had conducted a full investigation under PREA guidelines and, based on that investigation, determined that Plaintiff had intentionally filed a false grievance. Plaintiff complains that the investigation did not include review of the video or interviews with prisoners or staff who were present. Defendant Klien interviewed Plaintiff on the misconduct the following day, and he attempted to convince Plaintiff to plead

guilty and accept 15 days' loss of privileges. When Plaintiff refused, Defendant Klien "threatened" Plaintiff by saying that he would document that Plaintiff had refused the offer to plead guilty, which Plaintiff contends violates prison policy and deliberately tainted the misconduct hearing process. (*Id.*, PageID.15.) On July 5, Plaintiff filed a grievance against Defendants Palmer and Jackson for conspiring to file a false disciplinary charge in retaliation for Plaintiff's having reported sexual abuse. That same day, Plaintiff filed a grievance against Defendant Klien for allegedly retaliating and interfering with Plaintiff's right to a fair hearing process.

Two days later, on July 7, Defendant Jackson gave Plaintiff a copy of the Notification of Sexual Abuse and Sexual Harassment Investigative Findings and Action, which indicated that the investigation was completed on July 1, 2015, and that no evidence was found to support his claim. Defendant Jackson confronted Plaintiff about meetings he had recently attended with Captain Cusack about Plaintiff's multiple grievances, and he demanded that Plaintiff sign off on those grievances. When Plaintiff refused, Defendant Jackson threatened to file additional false misconduct charges against Plaintiff. Defendant Jackson also allegedly discussed Plaintiff's grievances with numerous prisoners, expressing his vendetta against Plaintiff and boasting that he had filed a misconduct against Plaintiff for interfering with the administration of rules.

On June 13, Defendant Bevington intercepted Jackson's misconduct report and improperly held a hearing. During the hearing, Plaintiff told Bevington that his hearing was illegal under Policy Directive 03.03.105, which precludes officers who are involved in the misconduct from acting as hearing officers. Defendant Bevington "vindictively" told Plaintiff that he should not have filed a grievance against Bevington and that prisoners have no rights. (*Id.*, PageID.16.) He also told Plaintiff that the warden was behind the misconduct and that Plaintiff therefore was guilty. Plaintiff threatened to file another grievance and to report

-5-

Defendant Bevington to Captain Cusack.  Plaintiff spoke with Cusack, who, on July 4, discarded Bevington's hearing report, conducted a new hearing, and found Plaintiff not guilty of interfering with the administration of rules.  Cusack concluded that, based on a complete investigation of the search incident, including review of prisoner statements and the video footage, Plaintiff had not intentionally filed a false grievance.

Plaintiff then kited Defendant Miller about properly addressing Defendant Bevington's retaliatory misconduct.  Defendant Miller allegedly "downplayed" Bevington's conduct and "misled" Plaintiff to believe that it was not a grievable issue.  (*Id.*, PageID.17.)  Nevertheless, Plaintiff filed a grievance against Defendant Bevington for conspiring with Defendants DeMaeyer, Palmer, Jackson, and Klien to retaliate against Plaintiff for initiating a PREA investigation.  In conducting a hearing on the grievance, Defendant Chaney allegedly failed to properly process and document the grievance and failed to attach Captain Cusack's misconduct determination.  Plaintiff kited Miller about his neglect and then filed a grievance against Defendant Miller for failing to provide a copy of the July 14, 2015, misconduct hearing packet.

Plaintiff alleges nine multi-part, ostensibly federal, claims for relief: (1) a claim against Defendant DeMaeyer for violating his bodily privacy; (2) a Fourth, Fifth, Eighth and Fourteenth Amendment claim against DeMaeyer for sexual assault and unreasonable search; (3) an claim against Bevington for permitting and approving DeMaeyer's repeated sexual assault, failure to supervise, and obstruction of the misconduct hearing report; (4) a claim against Jackson for being deliberately indifferent to his claim of sexual assault, filing a false misconduct, harassing Plaintiff, and discussing Plaintiff's grievances with other prisoners; (5) a claim against Defendant Palmer by being deliberately indifferent to

-6-

Plaintiff's claims, allowing Jackson to investigate the PREA claim, intentionally approving or allowing Jackson to file a false PREA report, and conspiring with Jackson to discredit Plaintiff and retaliate against him for filing grievances; (6) a claim against Defendant Klien for being deliberately indifferent to the sexual assault, ignoring Plaintiff's retaliation defense, informing Bevington that Plaintiff refused the plea offer, and deliberately tainted the hearing process in retaliation for filing grievances; (7) a claim against Defendant Chaney for deliberate indifference to the assault, suppressing the July 15, 2015, hearing report and the not-guilty finding, and doing so to retaliate against Plaintiff; (8) a claim against Defendant Miller for deliberately ignoring the sexual assault, initiating a conspiracy with Jackson, Palmer, Klien, Bevington, DeMaeyer, and Chaney to violate the PREA investigation, falsely classifying the grievance, circumventing the investigation, issuing a false memorandum, and falsely representing the Bevington's obstruction of the misconduct hearing process was non-grievable; and (9) a claim against all Defendants for causing extreme emotional distress. He also raises state-law claims of assault and battery, gross negligence, and intentional infliction of emotional distress.  Plaintiff contends that he has suffered extreme emotional distress and anxiety, resulting in loss of sleep and appetite and continuing flashbacks.

II.    Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must

determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

A.    Supervisory Liability

A plaintiff bringing an action pursuant to § 1983 cannot premise liability upon a theory of respondeat superior or vicarious liability. *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009); *Street v.*

*Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996) (citing *Monell v. New York City Dep't of Soc.*

*Servs.*, 436 U.S. 658 (1978)).  As the Sixth Circuit has repeatedly emphasized:

> Section 1983 liability will not be imposed solely upon the basis of respondeat superior.
> There must be a showing that the supervisor encouraged the specific incident of
> misconduct or in some other way directly participated in it.  At a minimum, a § 1983
> plaintiff must show that a supervisory official at least implicitly authorized, approved or
> knowingly acquiesced in the unconstitutional conduct of the offending subordinate.

*Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 81 (6th Cir. 1995) (citing *Bellamy v. Bradley*,  729 F.2d

416, 421 (6th Cir. 1984)); *accord Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995); *Walton*

*v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby County Sheriff*, 891 F.2d

1241, 1246 (6th Cir. 1989).  Liability under § 1983 must be based on active unconstitutional behavior and

cannot be based upon "a mere failure to act."  *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)

(quoting *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir.1998)).  It is not sufficient to allege

that a supervisor failed to take action to correct the alleged unconstitutional conduct.  *See Peatross v. City*

*of Memphis*, 818 F.3d 233, 241 & n.3 (6th Cir. 2016).  Moreover, § 1983 liability may not be imposed

simply because a supervisor denied an administrative grievance or failed to act based upon information

contained in a grievance.  *See Shehee*, 199 F.3d at 300.

　　　　　Plaintiff alleges that Defendants Jackson, Palmer, Klien, Chaney, and Miller were

deliberately indifferent to the alleged sexual assault, because they did not adequately supervise their

subordinates and did not properly label, investigate or resolve his prison grievances about the sexual assault

and the conduct of other officers.  Allegations about these Defendants, as they relate to the handling of

grievances and the supervision of subordinates, fail to allege active constitutional behavior.

B.    Failure to Follow Prison Policy

To the extent that Plaintiff alleges that Defendants failed to follow prison policy in handling his grievances and complaints and in resolving his misconduct charge, he also fails to state a claim. A defendant's alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81.

C.    Denial of Due Process in Grievances and Misconducts

Plaintiff appears to argue that Defendants Bevington, Klien, Palmer, Chaney and Miller failed to provide him with due process in his grievance proceedings because they failed to properly categorize, investigate, and resolve his grievances. Plaintiff also alleges that Defendants Bevington, Jackson, and Palmer deprived him of due process by falsely charging him with a misconduct, failing to properly investigate the misconduct charge, failing to conduct a full review of the evidence underlying the misconduct, and permitting the misconduct to be resolved by a non-independent factfinder.

With respect to Plaintiff's claims that he was denied due process in his grievance proceedings, Plaintiff fails to state a claim. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v.*

-10-

*Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process. The failures of Defendants to adequately label, investigate, and resolve Plaintiff's grievances or to assign an independent factfinder did not deprive him of due process.

In addition, Plaintiff fails to state a due process claim based on the filing, investigation and resolution of his Class-II misconduct proceedings. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 486-87 (1995). Under Michigan Department of Corrections Policy Directive 03.03.105, ¶ B, a Class I misconduct is a "major" misconduct and Class II and III misconducts are "minor" misconducts. The policy further provides that prisoners are deprived of good time or disciplinary credits only when they are found guilty of a Class I misconduct. (*See* Policy Directive 03.03.105, ¶ AAAA). Therefore, Plaintiff could not have been denied good time or disciplinary credits as a result of his Class II misconduct conviction. The Sixth Circuit routinely has held that misconduct convictions that do not result in the loss of good time are not atypical and significant

deprivations and therefore do not implicate due process. *See, e.g., Ingram v. Jewell*, 94 F. App'x 271,

273 (6th Cir. 2004); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Green v. Waldren*, No.

99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL

617967, at *2 (6th Cir. Aug. 12, 1999). Plaintiff, therefore, fails to state a due process claim arising from

the charging, investigation and resolution of his Class II misconduct conviction.

   For the same reasons, Plaintiff cannot demonstrate that Defendants conspired to deprive

him of his due process rights. A civil conspiracy under § 1983 is "an agreement between two or more

persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir.

2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). The plaintiff must show the

existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to

deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy

caused an injury to the plaintiff. *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598,

602 (6th Cir. 2011). Because Plaintiff fails to demonstrate that Defendants took unlawful action in the

grievance process and misconduct proceedings, he cannot demonstrate that Defendants reached an

agreement to deprive him of his right to due process.

   D. PREA

   To the extent that Plaintiff suggests that Defendants' actions violated the PREA, he fails to

state a claim. Although the question has not been addressed by the Sixth Circuit, several district courts

have found that the PREA "does not create a right of action that is privately enforceable by an individual

civil litigant." *Porter v. Louisville Jefferson Cty. Metro Gov't*, No. 3:13CV–923–H, 2014 WL

6883268, at *3 (W.D. Ky. Dec. 5, 2014) (quoting *LeMasters v. Fabian*, Civ. No. 09702, 2009 WL

1405176, at *2 (D. Minn. May 18, 2009), and collecting cases); *see also Hill v. Hickman Cty. Jail*, No.

1:15-cv-71, 2015 WL 5009301, at *3 (M.D. Tenn. Aug. 21, 2015); *Simmons v. Solozano*, No.

3:14CV-P354-H, 2014 WL 4627278, at *4 (W.D. Ky. Sept. 16, 2014).

> The PREA is intended to address the problem of rape in prison, authorizes grant money, and creates a commission to study the issue. 42 U.S.C. § 15601 et seq.  The statute does not grant prisoners any specific rights.  In the absence of "an 'unambiguous' intent to confer individual rights," such as a right to sue, courts will not imply such a right in a federal funding provision.

*Id.* (quoting *Chinnici v. Edwards*, No. 1:07–cv–229, 2008 WL 3851294, at *3 (D. Vt. Aug.12, 2008)

(quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 280 (2002)).

Like the cited courts, this Court concludes that the PREA creates no private right of action.

As a result, to the extent the complaint might be construed as bringing a claim under the PREA, such claim

must be dismissed.

### E.    Eighth Amendment

Plaintiff complains that Defendant DeMaeyer violated his Eighth Amendment rights by

sexually touching him during a pat-down search and that Defendant Bevington expressly authorized

Defendant DeMaeyer to continue the constitutionally violative assault.  He also alleges that Defendants

DeMaeyer and Bevington used assaultive and harassing language to mock him.[1]  Finally, Plaintiff suggests

that Defendant Jackson's actions in interviewing Plaintiff in the presence of DeMaeyer and commenting on

the frivolousness of his grievance amount to harassment that violated the Eighth Amendment.

---

[1]In addition, Plaintiff claims that the remaining Defendants violated the Eighth Amendment and increased his injury by ignoring his grievances and failing to take corrective action against Defendants DeMaeyer and Bevington. As earlier discussed, the failure to supervise and to take action on a grievance does not state an actionable § 1983 claim.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.  Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981).  The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).  The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998).  The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted).  Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.  "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347).  As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).  Allegations of negligence fall short of the deliberate indifference

-14-

required to state an Eighth Amendment claim. *See Farmer*, 511 U.S. at 835 (holding that an Eighth Amendment violation requires a "state of mind more blameworthy than negligence").

"[B]ecause the sexual harassment or abuse of an inmate by a corrections officer can never serve a legitimate penological purpose and may well result in severe physical and psychological harm, such abuse can, in certain circumstances, constitute the 'unnecessary and wanton infliction of pain' forbidden by the Eighth Amendment." *Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997) (quoted cases omitted).

Circuit courts consistently have held that sexual harassment, absent contact or touching, does not satisfy the objective requirement because such conduct does not constitute the unnecessary and wanton infliction of pain. *See Morales v. Mackalm*, 278 F.3d 126, 132 (2d Cir. 2002) (allegations that prison guard asked prisoner to have sex with her and to masturbate in front of her and other female staffers did not rise to level of Eighth Amendment violation); *Barney v. Pulsipher*, 143 F.3d 1299, 1311 n.11 (10th Cir. 1998) (allegations that county jailer subjected female prisoners to severe verbal sexual harassment and intimidation was not sufficient to state a claim under the Eighth Amendment); *Howard v. Everett*, No. 99-1277EA, 2000 WL 268493, at *1 (8th Cir. March 10, 2000) (sexual comments and gestures by prison guards did not constitute unnecessary and wanton infliction of pain); *cf. Seltzer-Bey v. Delo*, 66 F.3d 961, 962-63 (8th Cir. 1995) (allegations that prison guard conducted daily strip searches, made sexual comments about prisoner's penis and buttocks, and rubbed prisoner's buttocks with nightstick were sufficient to withstand motion for summary judgment); *Zander v. McGinnis*, No. 97-1484, 1998 WL 384625, at *2 (6th Cir. June 19, 1998) (verbal abuse of mouthing "pet names" at prisoner for ten months failed to state an Eighth Amendment claim); *Murray v. United States Bureau of Prisons*, No. 95-5204,

-15-

1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) (magistrate judge correctly held that verbal abuse in the form of offensive remarks regarding a transsexual prisoner's bodily appearance, transsexualism, and presumed sexual preference cannot state an Eighth Amendment claim). As a result, the comments of any Defendant other than Defendants DeMaeyer and Bevington fall short of stating a claim.

        In addition, Defendant DeMaeyer's allegedly improper touching during a pat-sown search falls short of stating an Eighth Amendment claim. Courts have held that minor, isolated incidents of sexual touching coupled with offensive sexual remarks do not rise to the level of an Eighth Amendment violation. *See, e.g., Solomon v. Mich. Dep't of Corr.*, 478 F. App'x 318, 320-21 (6th Cir. 2012) (two "brief" incidents of physical contact during pat-down searches, including touching and squeezing the prisoner's penis, coupled with sexual remarks, do not rise to the level of a constitutional violation); *Jackson v. Madery,* 158 F. App'x 656, 661 (6th Cir. 2005) (correction officer's conduct in allegedly rubbing and grabbing prisoner's buttocks in degrading manner was "isolated, brief, and not severe" and so failed to meet Eighth Amendment standards); *Johnson v. Ward*, No. 99-1596, 2000 WL 659354, at *1 (6th Cir. May 11, 2000) (male prisoner's claim that a male officer placed his hand on the prisoner's buttock in a sexual manner and made an offensive sexual remark did not meet the objective component of the Eighth Amendment); *Berryhill v. Schriro*, 137 F.3d 1073, 1075 (8th Cir. 1998) (where inmate failed to assert that he feared sexual abuse, two brief touches to his buttocks could not be construed as sexual assault); *accord Boxer X v. Harris,* 437 F.3d 1107, 1111 (11th Cir. 2006); *Boddie v. Schneider*, 105 F.3d 857, 859-61 (2d Cir. 1997) (court dismissed as inadequate prisoner's claim that female corrections officer made a pass at him, squeezed his hand, touched his penis, called him a "sexy black devil," pressed her breasts against his chest, and pressed against his private parts).

As a result, if Plaintiff's allegations are true, Officer DeMaeyer's conduct during the search was reprehensible, but it does not rise to the level of an Eighth Amendment violation. Even if Defendant DeMaeyer lingered over Petitioner's genitals and buttocks during the search, his conduct was not sufficiently severe to rise to the level of an Eighth Amendment violation. *See Solomon*, 478 F. App'x at 320-21; *Jackson,* 158 F. App'x at 661. Because Defendant DeMaeyer's conduct did not violate the Eighth Amendment, Defendant Bevington's failure to intervene also did not violate the Eighth Amendment.[2]

In sum, Plaintiff's allegations fail to state an Eighth Amendment claim against any Defendant.

F.       Fourth Amendment – Privacy

Plaintiff contends that Defendant DeMaeyer's pat-down search violated his right to privacy under the Fourth Amendment. The applicability of the Fourth Amendment to a prisoner's claim of privacy turns on whether the person invoking the Fourth Amendment can claim a justifiable, reasonable, or legitimate expectation of privacy that has been invaded by government action. *Hudson v. Palmer*, 468 U.S. 517, 525. In determining whether a prisoner has such an interest, the court "must decide [whether] a prisoner's expectation of privacy . . . is the kind of expectation that 'society is prepared to recognize as

---

[2] Plaintiff also asserts a violation of his substantive due process rights under the Fourteenth Amendment, which prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV.  "Where a particular [a]mendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that [a]mendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing such a claim." *Albright v. Oliver*, 510 U.S. 266, 266 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens, and the Eighth Amendment provides the standard for such searches of prisoners)).  If such an amendment exists, the substantive due process claim is properly dismissed.  *Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013).  As previously discussed, the Eighth Amendment provides an explicit source of constitutional protection to Plaintiff concerning his sexual harassment claims. *See Dodson v. Wilkinson*, 304 F. App'x 434, 438 (6th Cir. 2008) (because the Eighth Amendment supplies the explicit textual source of constitutional protection for claims governing a prisoner's health and safety, the plaintiff's substantive due process claim was subject to dismissal).  Consequently, Plaintiff's substantive due process claim will be dismissed.

"reasonable."'" *Id.* (quoting *Katz v. United States*, 389 U.S. 347, 360-61 (1967). The *Hudson* Court recognized that while prisoners are not beyond the reach of the Constitution, "curtailment of certain rights is necessary, as a practical matter, to accommodate a 'myriad of institutional needs and objectives' of prison facilities, . . . chief among which is internal security." *Id.* at 523–24 (internal citation omitted). The Court went on to hold "that society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell." *Id.* at 526. The Court reasoned that "[a] right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order." *Id.* at 527–28. *Hudson* thus upheld, against Fourth Amendment challenge, a policy permitting random cell searches. The court recognized the risk that "random" searches could be conducted out of malicious motive, strictly for the purpose of harassing inmates. The court expressly disavowed any intent to condone such abuse, but held that the appropriate remedy is found not in the Fourth Amendment, but in the Eighth Amendment's prohibition against cruel and unusual punishments, or in state tort law. *Id.* at 528–30.

At least one court has construed *Hudson* as holding categorically that "the Fourth Amendment does not protect privacy interests within prisons." *Johnson v. Phelan*, 69 F.3d 144, 150 (7th Cir. 1995). Yet, other courts, including the Sixth Circuit, have recognized that inmates retain limited rights to bodily privacy under the Fourth Amendment. *See Cornwell v. Dahlberg*, 963 F.2d 912, 916 (6th Cir. 1992) (involving strip searches conducted outdoors, in front of other inmates and at least seven officers); *Moore v. Carwell*, 168 F.3d 234, 236-37 (5th Cir. 1999) (involving a strip search in the presence of multiple officers); *Peckham v. Wisconsin Dept. of Corrections*, 141 F.3d 694, 697 (7th Cir. 1998) (upholding reasonable strip searches, acknowledging that some strip searches could violate a privacy

interest, and underscoring the narrowness of such a privacy right, and recognizing that the primary

protection for inmates is the Eighth Amendment); *Somers v. Thurman*, 109 F.3d 614, 618-19 (9th Cir.

1997) (finding no clearly established right to not be strip searched by female officer); *Fortner v. Thomas*,

983 F.2d 1024, 1030 (11th Cir. 1993) (alleging that female officers frequently and abusively took lengthy

opportunities to view naked prisoners through the cracks in their doors); *Kent v. Johnson*, 821 F.2d 1220,

1226-27 (6th Cir. 1987) (recognizing that there may be some "vestige of the right to privacy retained by

prisoners . . . from being forced unnecessarily to expose their bodies to guards of the opposite sex," but

holding that incidental observation by female guards did not state a claim).

Even if a convicted prisoner retains a limited privacy right, prison officials may impinge on

that right if the regulation "is reasonably related to legitimate penological interests." *See Turner v. Safley*,

482 U.S. 78, 89 (1987). To determine whether a prison official's actions are reasonably related to a

legitimate penological interest, the Court must assess an official's actions by reference to the following

factors: (1) whether there exists a valid, rational connection between the prison regulation and the legitimate

governmental interest; (2) whether there remain alternative means of exercising the right; (3) the impact that

accommodation of the asserted constitutional right will have on guards and other inmates, and on the

allocation of prison resources generally; and (4) whether there are ready alternatives available that fully

accommodate the prisoner's rights at de minimis cost to valid penological interests. *Turner*, 482 U.S. at

89-90.

Plaintiff does not argue that Defendants DeMaeyer and Bevington violated his reasonable

expectation of privacy when they conducted a pat-down search on him as he left the food services building.

Nor does he contend that officers violated such a reasonable expectation when DeMaeyer touched the area

of his genitals and buttocks in conducting his pat-down search. Instead, Plaintiff claims only that he had a legitimate privacy interest under the Fourth Amendment in not having DeMaeyer's hands linger for what Plaintiff perceived as too long over the areas of his genitals and buttocks.

Although the Sixth Circuit has recognized certain limited circumstances that might continue to raise a Fourth Amendment privacy claim, Plaintiff's allegations do not rise to that level. In *Cornwell v. Dahlberg*, 963 F.2d at 916, the Sixth Circuit recognized the facial validity of a Fourth Amendment invasion-of-privacy claim where male prisoners were allegedly strip searched outside in the prison yard in the presence of other inmates and female officers. In *Kent*, 821 F.2d 1220, the court held that a Fourth Amendment challenge to a prison policy requiring male prisoners to expose their naked bodies to regular and continuous surveillance by female officers was facially valid. Similarly, other courts that have recognized prisoners' bodily privacy interests have done so in the context of relatively serious intrusions, comparable to those presented in *Cornwell* and *Kent*. *See Moore*, 168 F.3d at 236 (cross-gender strip searches); *Peckham*, 141 F.3d at 697 (strip searches); *Somers*, 109 F.3d at 618–22 (cross-gender body cavity searches and cross-gender surveillance of prisoners while naked); *Fortner*, 983 F.2d at 1028–30 (cross-gender surveillance of prisoners while naked); *Covino*, 967 F.2d at 77–80 (body cavity searches).

Plaintiff's claims do not involve an intrusion of any such magnitude. Plaintiff was fully clothed during the search. He was not forced to expose his genitals to a female officer. The period of the search was of limited duration, conducted as Plaintiff was leaving the food service area. The Court is convinced that "society is not prepared to recognize as legitimate [a prisoner's] subjective expectation of privacy," *Hudson*, 468 U.S. at 560, in having his genitals and buttocks free from a pat-down search, even if the searcher lingered for a short period of time over the prisoner's genitals and buttocks. *See Johnson*

-20-

*v. City of Kalamazoo*, 124 F. Supp. 2d 1099, 1102-1104 (W.D. Mich. 2000) (declining to recognize

that prisoners possessed a privacy interest in not being stripped to their underwear and t-shirts for between

30 minutes and 18 hours while being subjected to constant supervision by female employees. *Id.* at 1104;

*Bradbury v. Hammond*, 2:13-cv-13376, 2013 WL 4521117, at *3 (E.D. Mich. Aug. 27, 2013) (holding

that a female prisoner's being left on a bed pan, exposed to passing staff members, for 30 minutes did not

violate a reasonable expectation of privacy) (citing *Cornwell*, 963 F.2d at 916).  If an officer's pat-down

search is abusive, a prisoner is more properly protected under the Eighth Amendment. *See Hudson*, 468

U.S. at 530.[3]

### G.    Retaliation

Plaintiff raises a series of retaliation claims.  He suggests that DeMaeyer retaliated against

him by threatening him, saying, "[C]omplaining is gonna get you in a lot of trouble."  Compl., ECF No. 1,

PageID.12.)  Similarly, Plaintiff claims that Defendant Bevington retaliated by aggressively telling Plaintiff

that he should drop his grievance.  Plaintiff also claims that Defendant Jackson filed a false Class-II

misconduct report for interference with the administration of the rules, in retaliation for the filing of Plaintiff's

grievance.  He contends that Defendant Palmer either approved or allowed Jackson to file the false

misconduct.  In addition, Plaintiff claims that Defendant Bevington improperly reviewed Plaintiff on

---

[3]Indeed, the undersigned has serious questions whether the Fourth Amendment is properly applied to an analysis of a convicted prisoner's claim that he was deprived of his right to bodily privacy.  The Sixth Circuit has recently discussed that different constitutional amendments govern whether the force used during a search is reasonable, depending on the status of the plaintiff.  In *Coley v. Lucas Cty.*, 799 F.3d 530, 537-38 (6th Cir. 2015), the Sixth Circuit recognized that a free citizen's claim of excessive force is analyzed under the Fourth Amendment, *Graham v. Connor*, 490 U.S. 386, 396 (1989); a pretrial detainee's excessive-force claim is analyzed under the Fourteenth Amendment, *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015); and a convicted-prisoner's claim of excessive force is analyzed under the Eighth Amendment, *Hudson v. McMillian*, 503 U.S. 1, 5, 7 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).  Arguably, privacy claims should be analyzed solely under those same amendments.

Jackson's misconduct charge, "vindictively" told Plaintiff that he should not have filed a grievance, found Plaintiff guilty of the misconduct charge (a finding that was later overturned), and sentenced Plaintiff to 15 days' loss of privileges on a Class-II misconduct.  Further, Plaintiff alleges that Defendant Klien retaliated against him by strongly urging him to plead guilty to the misconduct charge in exchange for a sanction of 15 days' loss of privileges and by telling Bevington of Plaintiff's refusal to accept the plea.

The filing of a prison grievance may be constitutionally protected conduct for which a prisoner cannot be subjected to retaliation.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Hall v. Nusholtz*, No. 99-2442, 2000 WL 1679458, at *2 (6th Cir. Nov. 1, 2000); *Burton v. Rowley*, No. 00-1144, 2000 WL 1679463, at *2 (6th Cir. Nov. 1, 2000).  However, frivolous grievances are not protected conduct.  *See Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010).  In addition, conduct that violates a legitimate prison regulation is not protected conduct.  *See Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008) (holding that a prisoner's act of calling the hearing officer a "foul and corrupted bitch" was not protected conduct because such behavior fell within the definition of "insolence" under the MDOC Policy Directive governing prisoner misconduct); *see also Caffey v. Maue*, ___ F. App'x ___, 2017 WL 659349 (7th Cir. Feb. 15, 2017) (holding that an inmate's name-calling of guards (calling them unprofessional) was a challenge to the guards' authority that was not protected by the First Amendment); *Felton v. Huibregtse*, 525 F. App'x 484, 487 (7th Cir. 2013) (holding that the use of disrespectful language was not protected conduct) (citing cases); *Freeman v. Tex. Dep't of Crim. Justice*, 369 F.3d 854, 858, 864 (5th Cir. 2004) (concluding that an inmate who accused a chaplain of theological errors during a religious service had engaged in an unprotected challenge to institutional authority).

Under MDOC policy, if Plaintiff intentionally filed a false grievance, his conduct in filing the grievance would not be protected.  *See* MICH. DEP'T OF CORR., Policy Directive 03.03.105B, Code 423 (Eff. Apr. 9, 2012) (the misconduct charge of Interference with the Administration of Rules includes "making false accusations against another prisoner or staff which results in disciplinary action being initiated against the person," if the prisoner, knowing the grievance was false, intentionally filed a false grievance). However, Plaintiff was ultimately found to be not guilty of intentionally filing a false grievance.  As a consequence, the Court will assume that the filing of his grievances were protected conduct, supporting the first element of Plaintiff's various retaliation claims.

With respect to the second element, however, Plaintiff's claim against Defendant DeMaeyer falls short.  A specific threat of harm may satisfy the adverse-action requirement if it would deter a person of ordinary firmness from exercising his or her First Amendment rights, *see, e.g., Thaddeus-X*, 175 F.3d at 396, 398 (threat of physical harm); *Smith v. Yarrow*, 78 F. App'x 529, 542 (6th Cir. 2003) (threat to change drug test results).  However, certain threats or deprivations are so *de minimis* that they do not rise to the level of being constitutional violations. *Thaddeus-X*, 175 F.3d at 398; *Smith*, 78 F. App'x at 542.  Plaintiff alleges that Defendant DeMaeyer told Plaintiff that complaining would get him into a lot of trouble.  DeMaeyer took no other action against Plaintiff.  Such a vague threat of unspecified harm falls short of adverse action.  The Court therefore will dismiss the retaliation claim against Defendant DeMaeyer.

Upon review, however, the Court concludes that Plaintiff has sufficiently alleged facts supporting a retaliation claim against Defendants Jackson, Palmer and Bevington for their involvement in the charging and disposition of the allegedly retaliatory misconduct.  The Court therefore will order service of the complaint on Defendants Jackson, Palmer and Bevington.

H.    State-law Claims

Plaintiff raises several state-law claims.  Claims under § 1983 can only be brought for "deprivation of rights secured by the constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982).  Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994).  Plaintiff's assertion that Defendants violated state law therefore fails to state a claim under § 1983.

Moreover, to the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over state-law claims against Defendants Klien, DeMaeyer, Chaney and Miller, the Court declines to exercise jurisdiction.  In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993).  Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *Id.*  Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).  Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction.  Accordingly, Plaintiff's state-law claims against Defendants Klien, DeMaeyer, Chaney and Miller will be dismissed without prejudice.  Plaintiff's state-law claims against the remaining Defendants will be allowed to proceed.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's federal claims against Defendants DeMaeyer, Klien, Chaney and Miller will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  Plaintiff's state-law claims against Defendants DeMaeyer, Klien, Chaney and Miller will be dismissed without prejudice.  The Court also will dismiss for failure to state a claim all of Plaintiff's claims, except his retaliation claims, against Defendants Palmer, Bevington and Jackson.  The Court will serve the retaliation claims on Defendants Palmer, Bevington and Jackson.

An Order consistent with this Opinion will be entered.


Dated:   April 6, 2017            /s/ Paul L. Maloney
                                  Paul L. Maloney
                                  United States District Judge